AUSA:   Trevor M. Broad          Telephone:  (313) 226-9100
AO 106 (Rev. 04/10)  Application for a Search Warrant   Special Agent:   Kyle Sise          Telephone:  (313) 202-3400

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

In the Matter of the Search of              )
*(Briefly describe the property to be searched*              )
*or identify the person by name and address)*              )          Case: 2:20−mc−50995 - 1
                                                          )   Case No.   Assigned To : Goldsmith, Mark A.
9528 Piedmont Street                        )          Assign. Date : 8/24/2020
Detroit, Michigan                           )          IN RE: SEALED MATTER (CMC)
(More fully described in Attachment A)       )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

located in the _____Eastern_____ District of _____Michigan_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) | Felon in possession of a firearm |

The application is based on these facts:

See attached AFFIDAVIT.

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kyle Sise, Special Agent (ATF)
_____
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date:   August 24, 2020
_____
*Judge's signature*

City and state:  Detroit, Michigan
_____
Hon. R. Steven Whalen      U. S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Kyle Sise, being first duly sworn, hereby depose and state as follows:

### Introduction

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the premises located at 9528 Piedmont Street, Detroit, Michigan ("Target Location") as further described in Attached A, for the items described in Attachment B. The Target Location is in the Eastern District of Michigan.

2.     The statements in this Affidavit are based on my personal knowledge from my direct involvement in this investigation; communications with others who have personal knowledge of the events and circumstances described herein; information provided by other law enforcement agents; and information gained through my training and experience as well as the training and experience of other experienced law enforcement officers.

3.     The information outlined below is for the limited purpose of establishing probable cause for the requested warrant, and this affidavit does not contain all the information known to law enforcement related to this investigation.

Agent Background

4.      I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco,

Firearms and Explosives ("ATF"), and have been since November 2016. I am

currently assigned to the Detroit Field Division. I am a graduate of the Criminal

Investigator Training Program and the ATF Special Agent Basic Training Program

at the Federal Law Enforcement Training Center in Glynco, Georgia.

5.      As an ATF Special Agent, I have participated in numerous federal

investigations as well as authored federal search warrants, federal criminal

complaints, and federal arrest warrants. Prior to becoming an ATF Special Agent, I

was a law enforcement officer for approximately seventeen years in Detroit,

Michigan.

Investigation Overview

6.      I am investigating Rockim OLIVER (XX/XX/1992), who resides at the

Target Location, for violations of federal firearms laws, including being felon in

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). As further detailed

below, there is probable cause to believe that evidence of this federal offense will be

found at the Target Location, including on the cellular device with assigned call

number (313) 673-5261 ("Target Device"), known to be used by OLIVER. There is

also probable cause to believe that the Target Device will be found at the Target

Location, where OLIVER resides, as I know from training and experience that cellphone users normally keep their cellphones on or near their person.

7.      The Target Location is believed to be OLIVER's current primary residence. OLIVER provided the Target Location as his probation address to the Michigan Department of Corrections ("MDOC"). OLIVER was on probation with MDOC from June 14, 2016 to February 13, 2018 and from May 18, 2018 to May 14, 2020. In addition, remote video surveillance of the Target Location conducted from August 17, 2020 to August 21, 2020 reflected that OLIVER has been staying overnight regularly at the Target Location, including over the past several nights. Furthermore, the Target Location is also a single-family residence located in Detroit, and based on my training and experience, I know that multiple overnight stays at the same location, when that location is a single-family residence, suggests that the individual may be using that location as a primary residence. In addition, from August 17, 2020 to August 21, 2020, ATF Agents conducted surveillance of the Target Location and observed OLIVER freely enter and exit the location on numerous occasions, which also supports the conclusion that the Target Location is OLIVER's primary residence. Accordingly, there is probable cause to believe that the Target Location is OLIVER's primary residence.

8.      As further detailed below, ATF obtained a federal search warrant authorizing the search and seizure of contents contained in Christian JOHNSON's

cellphone. During a search of the contents of JOHNSON's cellphone, agents discovered text message conversations between JOHNSON and telephone number (313) 673-5261. Probable cause exists that telephone number (313) 673-5261 belongs to OLIVER, as OLIVER provided that telephone number to MDOC as his contact number for his probation, and an inquiry of a law enforcement database listed telephone number (313) 673-5261 as belonging to OLIVER.

9.    I reviewed a computer criminal history ("CCH") for OLIVER that indicated that OLIVER has a 2016 felony conviction for Unarmed Robbery. As a result, I know from my training and experience that OLIVER cannot legally possess or purchase firearms.

<u>Probable Cause</u>

10.    Law enforcement has been investigating Christian JOHNSON for violations of federal firearms law. On July 21, 2020, JOHNSON and two other individuals—whose names are known to me but withheld for confidentiality, and for ease of reference are referred to as "B" and "T" herein—went to Safes and Guns Unlimited, a firearms dealer located in the Eastern District of Michigan. On July 21, 2020, JOHNSON and T were on probation and thus unable to purchase firearms.

11.    Law enforcement reviewed surveillance video from Safes and Guns Unlimited that showed the following: After arriving at Safes and Guns Unlimited, JOHNSON and T entered the store, while B waited in the car. Inside the gun store,

4

JOHNSON and T inquired about a Glock, Model 17, 9mm handgun, and a Ruger Model AR-556, 5.56 caliber firearm. Below is a snapshot from the surveillance video showing JOHNSON inside the store examining one of the firearms. JOHNSON and T then left the store and returned to the car. B then exited the car and entered the gun store, where B purchased the Glock, Model 17 and the Ruger, Model AR-556. After purchasing the two firearms, B returned to the vehicle and appeared to hand both guns to JOHNSON who was sitting in the back seat of the vehicle.



12.     Following the purchase of the Ruger AR-556 firearm and Glock, Model 17 pistol on July 21, 2020, pictures depicting a Ruger AR-556 and Glock, Model 17 were posted to an Instagram account associated with JOHNSON. In those pictures, the Ruger, AR-556 and Glock, Model 17 pistol were on the lap of an individual, believed to be JOHNSON because the individual is wearing black shorts, black and

white flip-flops, and a grey sweatshirt, all of which are consistent with the clothing JOHNSON was wearing at Safes and Guns Unlimited.

13.     Additional posted were made to the Instagram account associated with JOHNSON in which a firearm is depicted that has the same characteristics as the Ruger, AR-556 purchased on July 21, 2020. For example, in a video posted on July 23, 2020, a firearm is shown that has the same characteristics as the Ruger, AR-556, and in the video a caption of "1700" appears on the firearm, which I believe, based on my training and experience and from conversations with other experienced ATF special agents, is an advertisement offering to sell the firearm for $1,700.

14.     On August 5, 2020, ATF agents executed a federal search warrant at JOHNSON's residence. JOHNSON was arrested after agents recovered a firearm in his residence. Pursuant to the search warrant, agents also seized JOHNSON's cellular phone. Following JOHNSON's arrest, agents sought and obtained a federal search warrant authorizing the search and seizure of contents contained in JOHNSON's cellphone.

15.     During a search of the contents of JOHNSON's cellphone, agents discovered several text message conversations between JOHNSON and telephone number (313) 673-5261, *i.e.*, the call number for the Target Device that belongs to OLIVER. Based on my training and experience, the text message conversations

between JOHNSON and OLIVER indicate that OLIVER purchased a Ruger-556 firearm from JOHNSON.

16.     The following text message conversation[1] took place between July 21 2020 and July 27, 2020, and was recovered from JOHNSON's cellphone; the conversation is between JOHNSON and telephone number (313) 673-5261, *i.e.*, the telephone number for the Target Device which belongs to OLIVER:

*7/21/2020*

- JOHNSON: "When you think you gone be ready Brody"
- OLIVER: "Give me few days"
- JOHNSON: "Gang what you got rn"
- JOHNSON: "Koz I got something otf"
- JOHNSON: "You can kome up with 1400"
- OLIVER: "1000 bro but on my soul you kno yo brother got you"
- OLIVER: "Nigga this my last"
- JOHNSON: "Bet"
- JOHNSON: "Wya"
- JOHNSON: "You got me"
- OLIVER: "Crib"

---

[1] The text message conversation provided in this affidavit is not the entire text message conversation recovered from JOHNSON's cellular phone between JOHNSON and OLIVER. Rather this affidavit contains only a portion of the conversation, which is the portion I believe, based on my training and experience, relates to the sale of a firearm by JOHNSON to OLIVER.

In addition, as noted above, the recovered text message conversation is between JOHNSON and assigned call number "(313) 673-5261"; that assigned call number, as explained above, belongs to OLIVER. So, for ease of reference, "OLIVER" has been used for "(313) 673-5261" in the quoted text message conversation.

- JOHNSON: "Send low"
- OLIVER: "It's 43 on the air now I'll give you 600"
- OLIVER: "In"
- JOHNSON: "Dam I got a play otf"
- OLIVER: "Wya I'll come"
- JOHNSON: "That's a I'll bring it to you rn for the 1000"
- JOHNSON: Y*
- OLIVER: "Come on"
- JOHNSON: "Send low"
- OLIVER: "You kno yo brother got you nigga"
- OLIVER: "9530 piedmont"
- JOHNSON: "Is otf"
- OLIVER: "You coming now"
- JOHNSON: "Yeah"
- OLIVER: "Ok"
- OLIVER: "I'm here waiting on you"
- JOHNSON: "Is otf"
- OLIVER: "Bet"
- OLIVER: "Send a pic"
- OLIVER: "Hurry up trying ham this one nigga"
- JOHNSON:

 

- JOHNSON: "I'm holding the AR for you to"
- OLIVER: "Bro real nigga shit"
- OLIVER: "Money come Wednesday ima just give you 2k"
- JOHNSON: "So don't kome"

- OLIVER: "Hell yea come"
- OLIVER: "I'm waiting on you"
- JOHNSON: "Oh Alr bet"
- OLIVER: "I'm talking about for ar and money I owe you"
- JOHNSON: "I'm about to jump in car like 7min"
- JOHNSON: "Bet"
- OLIVER: "Its otf"
- JOHNSON: "I'm On my way! Brody"
- JOHNSON: "Don't go nowhere"
- OLIVER: "I'm not brody that's my word"
- JOHNSON: "Outside"
- OLIVER: "Come in"

### *7/22/2020*

- JOHNSON: "Brody"
- OLIVER: "Yo"
- JOHNSON: "You still want this AR"
- JOHNSON: "Nigga just asked to buy it"
- OLIVER: "Bro you sell it we gone fight no cap on my momma I'm coming bro"
- JOHNSON: "Bet"
- JOHNSON: "I gotcu Brody"
- OLIVER: "I'm hustling now just bought 1000 percs"

### *7/24/2020*

- JOHNSON:



_7/27/2020_

- OLIVER: "Brody"
- OLIVER: "You ready for me"
- OLIVER: "Bro I need you no cap"
- OLIVER:  "Whole 1500"
- OLIVER: "A nigga shot a my bitch wby she was leaving club"
- JOHNSON: "Wya"
- OLIVER:  "I'm the car"

17.     From my training and experience, I believe the above text-message conversation shows probable cause that OLVER purchased a Ruger-556 firearm from JONHSON at the Target Location.

a.     On July 21, 2020, OLIVER and JOHNSON appeared to be discussing prices when OLIVER asked JOHNSON to "send a pic" to which JOHNSON then sent a picture of multiple firearms. JOHNSON then told OLIVER "I'm holding the AR for you to," which I believe, based on my training and experience, is a reference to the Ruger, AR-556.

b.     In the text message conversation on July 22, 2020, JOHNSON stated, "You still want this AR", which I believe is referring to the Ruger, AR-556.

c.     On July 24, 2020, JOHNSON sent a picture of a Ruger, AR-556 to OLIVER.

d.    On July 27, 2020, OLIVER stated "You ready for me", "Bro I need you no cap", "Whole 1500". I believe, based on my training and experience, that in these messages OLIVER was offering to pay $1,500 for the Ruger AR-556, after OLIVER thought someone "shot" at his girlfriend when "she was leaving club."

e.    In response, JOHNSON stated, "Wya," which, based on my training and experience, is short for "where you at," and OLIVER replied, "I'm the car."

f.    In sum, these comments, along with the picture of the AR-556 sent to OLIVER by JOHNSON, establish probable cause that JOHNSON offered to sell OLIVER the Ruger AR-556 and OLIVER purchased that firearm.

18.    In addition, the Ruger AR-556 firearm was not recovered at JOHNSON's residence during the search warrant on August 5, 2020, which is consistent with the firearm having been sold by JOHNSON to OLIVER on or about July 27, 2020. And, there is reason to believe the firearm will be found at the Target Location as a search in a law enforcement database confirmed that the AR-556 firearm has not yet been recovered.

19.    In the text message conversation above, OLIVER appeared to provide an address of "9530 Piedmont." However, a search of an open source database and

surveillance of the area confirmed that "9530 Piedmont" does not exist. Based on my training and experience, I believe that correct address is "9528" Piedmont, which is OLIVER's residence, and is consistent with the context of the conversations in the text message conversation between JOHNSON and OLIVER as reflected above.

20.     On August 18, 2020, ATF Interstate Nexus Expert Special Agent Michael Kelly informed me that all Ruger firearms are manufactured outside the State of Michigan, and thus, by its subsequent presence in the State of Michigan, a Ruger firearm must have traveled in and/or affected interstate and/or foreign commerce.

<u>Training and Experience</u>

21.     Based on my knowledge, experience, training, and after consulting with other Special Agents, I know that individuals who possess firearms, to include convicted felons, keep, maintain and store their firearms in an area, which they perceive to be secure and readily accessible, most commonly in their homes, for various reasons to include self-defense.

22.     I am further aware that individuals who purchase and possess firearms commonly keep and retain the paperwork associated with their purchase, such as receipts, as a record of what they paid for the firearm. I am further aware that these individuals will have other items associated with firearms in their homes, including but not limited to ammunition, gun cases, cleaning kits, manuals, and photographs

that are often taken with cellular phones. I also know that firearms are less accessible to convicted felons and that convicted felons who obtain firearms tend to treat them as valuable possessions and retain them for extended periods.

23.     Based on my training and experience, I am aware that persons who engage in the illegal acquisition and possession of firearms commonly keep and maintain the firearms, firearms accessories, and firearms cleaning equipment in a place they deem to be secure and readily accessible to them, most commonly their residence/home, residence curtilage, vehicles, and storage facilities, for long periods of time, to include months and years.

<u>Use of Cellular Phones for Firearms Trafficking</u>

24.     Based on my training and experience, and the investigations of other law enforcement officers with whom I have had discussions, those who are engaged in firearms trafficking often use multiple cellular telephones to facilitate their trafficking activities. Firearms traffickers commonly use cellular telephones to communicate with co-conspirators, as well as to store names, numbers, and contact information of other subjects involved with their criminal activities, including customers, suppliers and couriers. Accordingly, cellular phones serve both as an instrumentality for committing the crime and a storage device for evidence of the crime.

25.     Cellular telephones are likely to contain evidence related to recently called firearms contacts and/or drug contacts, or messages/calls received from the contacts, the names and telephone numbers of firearms contacts, messages to/from firearms traffickers, photographs of or activity with firearms, and photographs of those involved in the crimes. In this respect, cellular telephones are tools of firearms trafficking.

26.     Cellular telephones contain a "call log," which records the telephone number, date, and time of calls made to and from the phone.

27.     Cellular telephones have increased capabilities to include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

28.     Based on my training and experience, and the investigations of other law enforcement officers with whom I have had discussions, I know that individuals involved in illegal firearms trade often post information regarding the sales of illegally possessed firearms through social media, such as Facebook and Instagram,

including using private messages to facilitate sales and posts advertising their merchandise. From speaking with other law enforcement officers of their investigations involving cellular telephones and firearms trafficking, it is common for prohibited persons to post photographs and/or videos of firearms.

29.     Therefore, I am requesting that the search warrant for the Target Location authorize the seizure of all cellphones associated with OLIVER located at the Target Location.

30.     Based on my training and experience, as well as from information found in publicly available materials including those published by Apple and other cellular phone manufactures, that some cellular phones such as iPhones offer their users the ability to unlock the device via the use of a fingerprint or thumbprint (collectively, "fingerprint") in lieu of a numeric or alphanumeric passcode or password. This feature is called Touch ID.

31.     If a user enables Touch ID on a given Apple device, he or she can register up to five fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) found at the bottom center of the front of the device. In my training and experience, users of Apple and other devices that offer Touch ID often enable it because it is considered a more convenient way to unlock

the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities and thus have a heightened concern about securing the contents of the device.

32.    In some circumstances, a fingerprint cannot be used to unlock a device that has Touch ID enabled, and a passcode or password must be used instead. These circumstances include: (1) when more than 48 hours has passed since the last time the device was unlocked and (2) when the device has not been unlocked via Touch ID in 8 hours and the passcode or password has not been entered in the last 6 days. Thus, in the event law enforcement encounters a locked Apple device, the opportunity to unlock the device via Touch ID exists only for a short time. Touch ID also will not work to unlock the device if (1) the device has been turned off or restarted; (2) the device has received a remote lock command; and (3) five unsuccessful attempts to unlock the device via Touch ID are made.

33.    The passcode or password that would unlock the cellular phone(s) seized at the Target Location is/are not known to law enforcement. Thus, it will likely be necessary to press the finger(s) of the user of the cellular phone(s) found during the search of the Target Location to the device's Touch ID sensor in an attempt to unlock the device for the purpose of deactivating the Touch ID and/or other security features to allow any future search authorized by a search warrant.

Attempting to unlock the relevant device(s) via Touch ID with the use of the fingerprints of the user is necessary because the government may not otherwise be able to access the data contained on those devices for executing any future search warrants authorized by a court of competent jurisdiction.

34.     Based on my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, based on my training and experience, that person may not be the only user of the device whose fingerprints are among those that will unlock the device via Touch ID, and it is possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, based on my training and experience, in some cases, it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any occupant of the Target Location to press their finger(s) against the Touch ID sensor of the locked Apple device(s) found during the search of the Target Locations in order to attempt to identify the device's user(s) and unlock the device(s) via Touch ID.

35.     Although I will not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience, it is

common for a user to unlock a Touch ID-enabled device via the fingerprints on thumbs or index fingers. In the event that law enforcement is unable to unlock the cellular phone(s) seized at the Target Location as described above within the five attempts permitted by Touch ID, this will simply result in the device requiring the entry of a password or passcode before it can be unlocked.

36.     Due to the foregoing, I request that the Court authorize law enforcement to press the fingers (including thumbs) of individuals found at the Target Location to the Touch ID sensor of the applicable cellular phone(s) found at the Target Location for the purpose of attempting to unlock the device via Touch ID in order to allow the search of the contents as authorized by any future search warrants. This search warrant only authorizes law enforcement to (1) unlock the phone; and (2) disable all security settings to enable a search of the device, subsequent to a search warrant, in the future.

<u>Manner of Execution</u>

37.     *Sealing of Documents*.  I request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.

## Conclusion

38.    I submit that this affidavit supports probable cause for a warrant to search the Target Premises described in Attachment A, and to seize the items described in Attachment B.

Respectfully submitted,

Kyle Sise, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means

HON. R. STEVEN WHALEN
United States Magistrate Judge

Dated: August 24, 2020

<u>ATTACHMENT A</u>
Description of Location To Be Searched

Target Location:  **9528 Piedmont Street, Detroit, Michigan**, which is in Eastern

District of Michigan. Further described as a single-family residence with red brick

and a brown roof. It is further described as a residence located adjacent to an alley

north of W. Chicago Street on the eastside of Piedmont, with the numbers "9528"

visible and attached the right of the front entrance. Furthermore, there is an

unattached garage in the backyard of the property.  The Target Location to be

searched includes any appurtenances to the real property that is the Target

Location and any vehicles on the property or curtilage at the time of the search.



ATTACHMENT B
Items To Be Seized

The Government is authorized to seize all information that constitutes fruits, evidence, or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm), involving Rockim OLIVER, including but not limited to, information pertaining to the following matters:

1. The cellular telephone assigned call number (313) 673-5261, *i.e.*, the Target Device;

2. All records related to the Target Device which establish dominion and control of the Target Device including any bills from cellphone providers;

3. Any firearms and ammunition;

4. Any photographs of any weapons, firearm, or ammunition;

5. All evidence of firearms trafficking including any sale, transportation, possession or distribution of a firearm, including but not limited to records, papers, ledgers, tally sheets, stored electronic communication devices, mobile telephones, telephone numbers of customers, suppliers, or couriers and the stored electronic information containing within, other papers;

6. Any digital media including but not limited to cell phones, digital cameras, computers, compact discs and flash drives that could contain photographs and contents therein; and

7. Items of identification and papers, documents and affects which establish dominion and control of the premises, including, but not limited to, driver's license, keys, mail, envelopes, receipts for rent, bills from public utilities, photos, address books and similar items.

AUSA:   Trevor M. Broad          Telephone:  (313) 226-9100
AO 93  (Rev. 11/13) Search and Seizure Warrant          Special Agent:     Kyle Sise          Telephone:   (313) 202-3400

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

|  |  |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| | ) |
| 9528 Piedmont Street | ) |
| Detroit, Michigan | ) |
| (More fully described in Attachment A) | ) |

Case No.   Case: 2:20−mc−50995 - 1
Assigned To : Goldsmith, Mark A.
Assign. Date : 8/24/2020
IN RE: SEALED MATTER (CMC)

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____Michigan_____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

**YOU ARE COMMANDED** to execute this warrant on or before   September 7, 2020          *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  the presiding United States Magistrate Judge on duy  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    August 24, 2020    10:10 am

City and state:    Detroit, Michigan

_____
*Judge's signature*

Hon. R. Steven Whalen    U. S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

        I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*